## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

In re:  MARIETTA CHEEKS,

Address:       17160 Belle Isle Drive
                    Dumfries, VA 22026

                    Debtor(s).

U.S. BANK, NATIONAL ASSOCIATION
        Plaintiff,

v.

MARIETTA CHEEKS,
        Debtor(s)

FREDERICK CHEEKS,
        Co-Debtor,

THOMAS P. GORMAN,
        Trustee

        Defendants.

CASE NO: 19-10516

CHAPTER 13

### NOTICE OF MOTION AND MOTION FOR ORDER CONFIRMING ABSENCE OF THE AUTOMATIC STAY, OR IN THE ALTERNATIVE, FOR NUNC PRO TUNC RELIEF FROM THE AUTOMATIC STAY AND CO-DEBTOR STAY

　　　　U. S. Bank, National Association, a creditor in this case, has filed papers with the court for the granting of an Order confirming absence of the automatic stay, or in the alternative, for the granting of  nunc pro tunc relief from the automatic stay and co-debtor stays of the Bankruptcy Code with regard to certain property more particularly described in those papers which are attached.

　　　　**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not wish the Court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, then within 14 days from the date of service of this motion, you must file a written response explaining your**

M. Christine Maggard, VSB# 33824
Brock & Scott, PLLC
484 Viking Drive, Suite 203
Virginia Beach, VA 23452
christine.maggard@brockandscott.com
*Counsel for the Movant*

**position with the Court and serve a copy on the movant. Unless a written response is filed and served within this 14-day period, the Court may deem opposition waived, treat the motion as conceded, and issue an order granting the requested relief without further notice or hearing. If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it on or before the expiration of the 14-day period (21-day period if you are the Co-Debtor).**

If you are the **<u>Debtor</u>** and you do not want the Court to grant this creditor relief from the provisions of the automatic stay of the Bankruptcy Code, or if you want the Court to consider your views on the Motion, then on or before **March 26, 2019,** you or your attorney must:

File with the Court, at the address shown below, a written response pursuant to Local Bankruptcy Rules 4001(a)-1(C) and 9013-1(H). If you mail your response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

> United States Bankruptcy Court
>  200 South Washington Street
> Alexandria, VA 22314

You must also mail a copy of any such response to:

> M. Christine Maggard, Esquire
> Brock & Scott, PLLC
> 484 Viking Drive, Suite 203
> Virginia Beach, VA 23452

Attend the preliminary hearing that will be conducted in the Alexandria Division of the **U.S. Bank**ruptcy Court, **200 South Washington Street, Alexandria, VA 22314 on APRIL 10, 2019 at 9:30 AM in Courtroom I**.

If no timely response has been filed opposing the relief requested, the Court may grant the relief requested in the Motion.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an Order granting the relief.

## NOTICE TO CO-DEBTOR

If you are the **<u>Co- Debtor</u>** and you do not want the Court to grant this creditor relief from the provisions of the automatic stay of the Bankruptcy Code, or if you want the Court to consider your views on the Motion, then on or before **April 2, 2019,** you or your attorney must:

File with the Court, at the address shown below, a written response pursuant to Local Bankruptcy Rules 4001(a)-1(C) and 9013-1(H). If you mail your response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

United States Bankruptcy Court
200 South Washington Street
Alexandria, VA 22314

You must also mail a copy of any such response to:

M. Christine Maggard, Esquire
Brock & Scott, PLLC
484 Viking Drive, Suite 203
Virginia Beach, VA 23452

Attend the preliminary hearing that will be conducted in the Alexandria Division of the **U.S. Bank**ruptcy Court, **200 South Washington Street, Alexandria, VA 22314 on APRIL 10, 2019 at 9:30 AM in Courtroom I**.

If no timely response has been filed opposing the relief requested, the Court may grant the relief requested in the Motion.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an Order granting the relief.

**TO ALL DEFENDANTS:**

**Pursuant to Rule 4001(a)-1(C) of the Local Rules of the United States Bankruptcy Court of the Eastern District of Virginia, you have fourteen (14) days (Twenty-one (21) days if you are the co-debtor) from March 11, 2019, the date of service of this Motion upon you, to file a written response thereto and you must file such response with the Clerk of the United States Bankruptcy Court, Alexandria Division, 200 South Washington Street, Alexandria, VA 22314 and serve a copy of same upon the Plaintiff's attorney, M. Christine Maggard, at 484 Viking Dr. Suite 203, Virginia Beach, VA 23452.**

TO THE HONORABLE BRIAN R. KENNEY:

Your Plaintiff, U. S. Bank, National Association (hereinafter "U.S. Bank"), respectfully

represents as follows:

1.  That this is a core proceeding within the meaning of the Bankruptcy Code and Rules.

2.  That on February 16, 2019, the above-named Debtor(s) filed a Petition in this Court.

3.  That Thomas P. Gorman was appointed Trustee of the property, has qualified and is now

    acting.

4.   That at the time of the filing of the Debtor's petition herein, the Debtor resided at a certain

real property and improvements having a street address of 17160 Belle Isle Drive, and more

particularly described as follows:

> All that certain lot, piece or parcel of land, with all improvements thereon and all
> appurtenances thereto belonging, located and being in the County of Prince William,
> Commonwealth    of    Virginia,    and    being    designated    as    follows:
>
> Lot 59, Phase 2B, Section 2, Harbor Station, as the same is duly dedicated in Instrument
> Number 201211160110982, and as shown on plat at Instrument Number
> 201211160110983, recorded among the land records of Prince William County, Virginia.
>
> Tax No.: 8389-26-3514
>
> Property address: 17160 Belle Isle Drive, Dumfries, VA 22026

5.   That the Plaintiff is the holder of a Note dated November 30, 2015, in the original principal

amount of $424,297.00 with interest thereon from said date at the rate of 4.00% per annum,

secured by a Deed of Trust on said real property and improvements recorded in the Clerk's

Office of the Circuit Court of the County of Prince William, Virginia. True copies of the

Note and Deed of Trust are attached hereto and incorporated by reference as Exhibits "A"

and "B", respectively.

6.   U. S. Bank had the right to foreclose because: U. S. Bank was the original mortgagee or

beneficiary or assignee of the security instrument for the referenced loan. U. S. Bank directly

or through an agent had possession of the promissory note and the promissory note is either

made payable to U. S. Bank or had been duly endorsed.   The loan was in default.

7.   The Debtor herein is **not** a party to the Note or Deed of Trust, and the property is deeded

solely to Frederick Cheeks.  The Deed is attached hereto as Exhibit "C".

8.   The current bankruptcy case was filed on a Saturday, preceding the foreclosure sale that was

noticed, advertised and scheduled for February 19, 2019 at 2:00 p.m.   The Debtor's

bankruptcy filing contained no schedules or plan, and, as of the filing of this motion, the

Debtor has not filed schedules or a plan.  There was no and is no indication that the Debtor

has a legal interest in the property, nor at the time of the sale or prior to it, had the Debtor

asserted an equitable interest in the property; therefore, the property was sold at the

scheduled foreclosure sale on behalf of the foreclosure trustee, Trustee Services of Virginia,

L.L.C., a Virginia Limited Liability Company.   A third-party, Clear Sky Properties, L.L.C.

(Clear Sky), was the high bidder/purchaser.  The sale price was $493,625.00 which was

sufficient to pay off the indebtedness on the Note.   In accordance with the terms of the Deed

of Trust, the foreclosure trustee collected a deposit in the amount of $45,000.00 from Clear

Sky.  The memorandum sale and Notice of Sale are attached hereto as Exhibit "D."

9.   Upon information and belief, the Debtor asserts an equitable interest in the property.     The

Debtor has asserted that pursuant to 11 U.S.C. § 541 (a)(1), property of the bankruptcy estate

includes "all legal or equitable interests of the debtor in property as of the commencement of

the case," and accordingly, 11 U.S.C. § 362(a)(3) applies to stay "any act to obtain

possession of property of the estate or of property from the estate or to exercise control over

property of the estate."

10.  To the extent that the Debtor is asserting an equitable interest in the property, Frederick

Cheeks may be considered a Co-Debtor pursuant to 11 U.S.C. § 1301.1

11.   Upon information and belief, at the time of the bankruptcy filing and the foreclosure sale,

the Debtor and Frederick Cheeks were married and they had not filed any action to dissolve

---

1  Relief from the co-debtor stay is sought out of an abundance of caution; however, US Bank does not believe it
applies.  11 U.S.C §1301 provides that a co-debtor stay arises from "a consumer debt *of the debtor* from any
individual that is liable on such debt *with the debtor*."  The Debtor is not liable on the debt to U.S. Bank.  The
Debtor has not raised the question of the applicability of the co-debtor stay

their marriage.

12. Mr. Cheeks filed two prior bankruptcy cases in what appears to be an attempt to stay the Bank's foreclosure efforts.  After unsuccessful efforts at loss mitigation, a non-judicial foreclosure sale was set for November 29, 2017.  On November 29, 2017, prior to the scheduled sale time, Frederick Cheeks filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division (BCN: 17-14027).  The sale was stayed.  On December 18, 2017, Mr. Cheeks' case was dismissed.

13. Foreclosure action was restarted following dismissal, and a sale was set for March 14, 2018.  Those efforts were placed on hold due to loss mitigation efforts.  On July 19, 2018, US Bank restarted foreclosure action when loss mitigation efforts were again unsuccessful.  The new foreclosure sale date was set as September 25, 2018.  On September 25, 2018, prior to the sale time, Frederick Cheeks again filed for relief under Chapter 13. (BCN: 18-13245).  The sale was stayed by the filing.  On November 19, 2018, the bankruptcy case was dismissed as Mr. Cheeks had failed again to timely file a plan and had failed to appear at the hearing.

14. The foreclosure trustee is unable to close the sale and record the foreclosure deed, or set aside this sale, without an Orderthis Court, determining the extent of the automatic stay in this case and granting an order confirming the absence of the automatic stay, or in the alternative, granting the Movant *nunc pro tunc* relief from the automatic and Co-Debtor stays of the Bankruptcy Code.

15. Upon information and belief, Clear Sky asserts that it was the high bidder/purchaser at a validly conducted foreclosure sale.  Clear Sky asserts that it has a valid legal right to purchase the property and stands ready to file actions to compel the same.

Upon information and belief, Clear Sky argues that Frederick Cheeks has a history of filing repeated bad faith bankruptcies. *See, e.g.,* In re: Frederick Cheeks, No. 1-2018-13245 (E.D. Va.) (dismissed 11-21-18 for failure to appear); 2017-14027 (E.D. Va.) (dismissed 12-20-17 for failure to file). He filed no bankruptcy related to this foreclosure, apparently because it was believed that a third filing may have immediately been deemed to be in bad faith. Clear Sky has stated that an assertion of the claim and alleged stay by Debtor Marietta Cheeks is part of an ongoing "scheme" "to delay or impede" foreclosure on the property contrary to the intentand terms of 11 U.S.C. § 362(d)(4), and to avoid the intent and terms of 11 U.S.C. § 362(c)(4) barring dilatory repeat bankruptcy filings that improperly burden the Court and interested parties like Clear Sky, US. Bank, and the foreclosure trustee. Clear Sky asserts that it has contractual, legal, equitable, and other rights and interests in the property. Clear Sky is prepared to proceed to closing in the ordinary course, and if necessary, to sue to force such closing.

16. U.S. Bank has attempted to foreclosure multiple times. Each sale was put on hold due to loss mitigation efforts and when those proved to be unsuccessful, each sale was stayed due to a bankruptcy filing.

17. Upon information and belief, the Debtor asserts an "equitable" interest in the property that is not recognized under Virginia law.

18. The facts hereinabove alleged constitute cause for an order confirming that the Debtor's purported equitable interest was not property of the estate and that there was no automatic stay or Co-debtor stay in effect at the time of filing that operated to stay the foreclosure sale at which Clear Sky was the successful bidder. In the alternative, U.S. Bank requests an Order granting *nunc pro tunc* relief from the automatic stay and § 1301 co-debtor stay.

WHEREFORE, Plaintiff prays that it be granted an Order confirming absence of the automatic stay, or, in the alternative, an Order granting relief, *nunc pro tunc,* from the provisions of the automatic stay and Co-debtor stay of the Bankruptcy Code with regard to the above-described real property and improvements including any act necessary to recover possession of same from the Debtor and Co-Debtor and that the stay of such grant of relief imposed pursuant to the provisions of Rule 4001(a)(3) of the Bankruptcy Rules be waived.

U. S. Bank, National Association

By: /s/M. Christine Maggard
Of Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2019 a true copy of the foregoing Notice of Motion and Motion was submitted for electronic transmittal or mailed, first class, postage prepaid to:

Marietta Cheeks
17160 Belle Isle Drive
Dumfries, VA 22026
*Debtor*

Frederick Cheeks
17160 Belle Isle Drive
Dumfries, VA 22026
*Co-Debtor*

Thomas P. Gorman
300 N. Washington St. Ste. 400
Alexandra, VA 22314
*Chapter 13 Trustee*

Nathan A. Fisher
3977 Chain Bridge Road, #2
Fairfax, VA 22030
*Counsel for Debtor*

John Fitzgerald, III
Office of the U.S. Trustee – Region 4
1725 Duke Street
Suite 650
Alexandria, VA 22314
*U.S. Trustee*

Edward J. Grass, Esq. Attorney-at-law
9501 Burke Road #10784
Burke, VA 22015
*Counsel for Clear Sky Properties, L.L.C.*

/s/ M. Christine Maggard
M. Christine Maggard, VSB# 33824
Brock & Scott, PLLC
484 Viking Drive, Suite 203
Virginia Beach, VA 23452

EXHIBIT A

ORIGINAL

ORIGINAL

MIN:

LOAN #:

FHA Case No.
548-5680848-703-203B

## NOTE

Commonwealth of Virginia

November 30, 2015                         FAIRFAX,                                    Virginia
[Date]                                       [City]                                      [State]

17160 Belle Isle Drive, Dumfries, VA 22026
[Property Address]

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means   George Mason Mortgage, LLC, a Virginia Limited Liability Company

and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of   **FOUR HUNDRED TWENTY FOUR THOUSAND TWO HUNDRED NINETY SEVEN AND NO/100 * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. $424,297.00        ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of   FOUR                                   percent ( 4.000 %        ) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the   **1st**              day of each month beginning on   **January 1, 2016.**          Any principal and interest remaining on the   **1st**              day of **December, 2045**      will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at   **4100 Monument Corner Drive, Suite 100
Fairfax, VA 22030**

or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S.   **$2,025.66.**              This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

[Check applicable box]   ☐ Graduated Payment Allonge          ☐ Growing Equity Allonge
                         ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When Borrower makes a Prepayment, Borrower will tell the Lender in writing that Borrower is doing so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly payments due under the Note.

Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Lender will use the Prepayments to reduce the amount of Principal that Borrower owes under this Note. However, the Lender may apply the Prepayment to any accrued and unpaid interest on the Prepayment amount before applying the Prepayment to reduce the Principal amount of the Note. If Borrower makes a partial Prepayment, there will be no changes in the due date or in the amount of the monthly payment unless the Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of   **FOUR**                          percent ( 4.000 %        ) of the overdue amount of each payment.

FHA Virginia Fixed Rate Note - 10/95                                                   Initials: _FC_
Ellie Mae, Inc.                                  Page 1 of 2                            VA8700NT   1214
                                                                                       VA8700NT
                                                                                       11/30/2015 09:43 AM PST



LOAN #: ▮▮▮▮▮▮

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Frederick Cheeks_ _____ (Seal)

FREDERICK CHEEKS

This is to certify that this is the Note described in and secured by a Deed of Trust dated **November 30, 2015,** on the Property located in Prince William County, Virginia.

My Commission Expires: _____

Notary Public _____

> PATRICIA MILLER REITZE
> NOTARY PUBLIC
> REG. #7520001
> COMMONWEALTH OF VIRGINIA
> MY COMMISSION EXPIRES SEPT. 30, 2017

Lender: George Mason Mortgage, LLC
NMLS ID: 153400
Loan Originator: Jenny Kim Larsen
NMLS ID: 189987

PAY TO THE ORDER OF U.S. BANK, N.A.
WITHOUT RECOURSE:
GEORGE MASON MORTGAGE, LLC
A VIRGINIA LIMITED LIABILITY COMPANY
BY _____
ELIZABETH ALLEN,
SR. VICE PRESIDENT

Pay to the order of
_____
Without Recourse
U.S. Bank National Association
_____
Paula T. Hughes
Vice President

Initials: _FC_

VA8700NT  1214
VA8700NT
11/30/2015 09:43 AM PST



*EXHIBIT B*

2015120200099138
Prince William County, VA Pgs: 11
12/2/2015 3:34:50 PM
Michele B. McGuigk, Clerk

When recorded, return to:
George Mason Mortgage, LLC
Attn: Final Document Department
4100 Monument Corner Drive, Suite 100
Fairfax, VA 22030

This document was prepared by:
George Mason Mortgage, LLC
4100 Monument Corner Drive, Suite 100
Fairfax, VA 22030
703-273-2600

AMOUNT OF CONSIDERATION: $424,297.00

[Space Above This Line For Recording Data]

LOAN #: ▮▮▮▮▮▮                                    FHA Case No.

Commonwealth of Virginia          **DEED OF TRUST**

Title Order No.: VM1065                            MIN:
Escrow No.:                                        MERS PHONE #: 1-888-679-6377

   THIS DEED OF TRUST ("Security Instrument") is made on   November 30, 2015.    The Grantor is
FREDERICK CHEEKS, MARRIED MAN

("Borrower").
The Trustee(s) is(are) Robert C. Brower Jr. & Daniel V. Lawson, Trustee (whether one or more persons)
is a Virginia resident and/or a United States-or Virginia-chartered corporation whose principal office is
located in Virginia. Trustee's address is 4100 Monument Corner Drive, Suite 100, Fairfax, VA 22030.

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely
as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security
Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone
number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
George Mason Mortgage, LLC, a Virginia Limited Liability Company

("Lender") is organized and
existing under the laws of  Virginia,
and has an address of   4100 Monument Corner Drive, Suite 100, Fairfax, VA 22030.

FHA Virginia Deed of Trust - 4/96
Ellie Mae, Inc.                          Page 1 of 7                     Initials: FC
                                                                         VAEFHADE 0715
                                                                         VAEFHADE
                                                                         11/30/2015 09:40 AM PST



LOAN #: ▮▮▮▮▮▮

Borrower owes Lender the principal sum of   FOUR HUNDRED TWENTY FOUR THOUSAND TWO HUNDRED NINETY SEVEN AND NO/100* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. $424,297.00          ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on   December 1, 2045.          The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in.
Prince William,                                   Virginia:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".

which has the address of   17160 Belle Isle Drive, Dumfries,
                                                                                                          [Street, City],
Virginia  22026                     ("Property Address");
                 [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.
1.   Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.   Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."



LOAN ▊▊▊▊▊▊

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 12 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.  **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
Third, to interest due under the Note;
Fourth, to amortization of the principal of the Note; and
Fifth, to late charges due under the Note.

4.  **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are



LOAN #: ██████

he xby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies

FHA Virginia Deed of Trust - 4/96
Ellie Mae, Inc.                                    Page 4 of 7

Initials: EC
VAEFHADE  0715
VAEFHADE
11/30/2015 09:43 AM PST



LOAN #

even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances .** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

FHA Virginia Deed of Trust - 6/96
Ellie Mae, Inc.

Page 5 of 7

Initials: _F.C._ 
VAEFHADE 0315
VAEFHADE
11/30/2015 09:43 AM PST

LOAN # ██████████

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower (and owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of    5.00 %        of the gross sale price and reasonable attorneys' fees; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Security Instrument; and (d) any excess to the person or persons legally entitled to it. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. Identification of Note. The Note is identified by a certificate on the Note executed by any Notary Public who certifies an acknowledgment hereto.

22. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Condominium Rider          ☐ Growing Equity Rider      ☒ Planned Unit Development Rider
☐ Graduated Payment Rider     ☐ Other(s) [specify]

FHA Virginia Deed of Trust - 4/96
Ellie Mae, Inc.                          Page 5 of 7                          Initials: _FC_
VAEPHADE  0715
VAEPHADE
11/30/2015 09.43 AM PST



LOAN #: ████████

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING
MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and
in any rider(s) executed by Borrower and recorded with it.

_Frederick Cheeks_ _____ _11-30-15_ (Seal)
FREDERICK CHEEKS                              DATE

STATE OF VIRGINIA
COUNTY ss: PRINCE WILLIAM Fairfax 11/30/15 PMR

The foregoing instrument was acknowledged before me this
11-30-15 _____ (date) by FREDERICK CHEEKS (name of person acknowledged).

_____
Notary Public

My commission expires: 9/30/17

Lender: George Mason Mortgage, LLC
NMLS ID: 153400
Loan Originator: Jenny Kim Larsen
NMLS ID: 189987

PATRICIA MILLER REITZE
NOTARY PUBLIC
REG. #7520001
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES SEPT. 30, 2017

Initials: _F C_
VAEFHADE  0715
VAEFHADE
11/30/2015 09:43 AM PST





LOAN #:

MIN:

FHA Case No.

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 30th        day of
November, 2015.            and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the
same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
**George Mason Mortgage, LLC, a Virginia Limited Liability Company**

("Lender") of the same date and covering the Property described in the Security
Instrument and located at:
17160 Belle Isle Drive
Dumfries, VA 22026.

The Property Address is a part of a planned unit development ("PUD") known as
HARBOR STATION

PUD COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common
areas and facilities), acting as trustee for the homeowners, maintains, with a
generally accepted insurance carrier, a "master" or "blanket" policy insuring the
property located in the PUD, including all improvements now existing or hereafter
erected on the mortgaged premises, and such policy is satisfactory to Lender
and provides insurance coverage in the amounts, for the periods, and against
the hazards Lender requires, including fire and other hazards included within
the term "extended coverage," and loss by flood, to the extent required by the
Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Secu-
rity Instrument for the monthly payment to Lender of one-twelfth of the yearly
premium installments for hazard insurance on the Property, and (ii) Borrower's
obligation under Paragraph 4 of this Security Instrument to maintain hazard
insurance coverage on the Property is deemed satisfied to the extent that the
required coverage is provided by the Owners Association policy. Borrower shall
give Lender prompt notice of any lapse in required hazard insurance coverage
and of any loss occurring from a hazard. In the event of a distribution of hazard
insurance proceeds in lieu of restoration or repair following a loss to the Property
or to common areas and facilities of the PUD, any proceeds payable to Borrower
are hereby assigned and shall be paid to Lender for application to the sums
secured by this Security Instrument, with any excess paid to the entity legally
entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the
legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender
may pay them. Any amounts disbursed by Lender under this paragraph C shall
become additional debt of Borrower secured by the Security Instrument. Unless
Borrower and Lender agree to other terms of payment, these amounts shall bear
interest from the date of disbursement at the Note rate and shall be payable, with
interest, upon notice from Lender to Borrower requesting payment.

FHA Multistate PUD Rider - 10/95                                      Initials: _FC_
Ellie Mae, Inc.                        Page 1 of 2                    P8700PUU  0805
                                                                     P8700PUU
                                                          11/30/2015 09:45 AM PST

8



LOAN #[REDACTED]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

Frederick Cheeks _____    11-30-15 (Seal)
FREDERICK CHEEKS                                    DATE

FHA Multistate PUD Rider - 10/93
Ellie Mae, Inc.                        Page 2 of 2

Initials: FC _____
                        P8700PUU 0508
                        P8700PUU
                        11/30/2015 09:43 AM PST

9



### EXHIBIT "A"

All that certain lot, piece or parcel of land, with all improvements thereon and all
appurtenances thereto belonging, located and being in the County of Prince
William, Commonwealth of Virginia, and being designated as follows:

**Lot 59, Phase 2B, Section 2, HARBOR STATION**, as the same is duly
dedicated in Instrument Number 201211160110982, and as shown on plat at
Instrument Number 201211160110983, recorded among the land records of
Prince William County, Virginia.

10





**201512020099137**
Prince William County, VA   Pgs: 2
12/2/2015 3:34:58 PM GrantorTaxPd
Michele B. McQuigg, Clerk $859.50

**D E E D**

**THIS DEED**, made this 2nd day of **November, 2015**, by and between **NVR, Inc., a Virginia Corporation**, Grantor, and **Frederick CHEEKS**, Grantee(s);

## W I T N E S S E T H:

That for and in consideration of the sum of Ten and No/100 Dollars ($10.00), cash in hand paid, and other good and valuable consideration, the receipt of which is hereby acknowledged, the Grantor does hereby bargain, sell, grant, and convey, in fee simple, with Special Warranty, unto the Grantee(s):

All that certain lot, piece or parcel of land, with all improvements thereon and all appurtenances thereto belonging, located and being in the County of Prince William, Commonwealth of Virginia, and being designated as follows:

**Lot 59, Phase 2B, Section 2, HARBOR STATION**, as the same is duly dedicated in Instrument Number 201211160110982, and as shown on plat at Instrument Number 201211160110983, recorded among the land records of Prince William County, Virginia.

AND BEING the same property conveyed to grantor by instrument recorded in Instrument Number 201505190038507, among the aforesaid land records.

This conveyance is also made expressly subject to the conditions, restrictions, reservations and easements of record, if any, affecting the aforesaid land records and constituting constructive notice.

| | |
|---|---|
| **Consideration:** | $859,400.00 |
| **Assessed Value:** | $294,200 land only |
| **Grantee's Address:** | 17160 Belle Isle Drive<br>Dumfries, VA<br>22026 |
| **Please Return to:** | NVR Settlement Services, Inc.<br>3701 Pender Drive, Suite 300<br><br>Fairfax, VA 22030 |
| **Tax Map Number:** | 8389-26-3514 |
| **File Number:** | 069-68242-15<br>VM1065 |

This Deed prepared by Angela Plowman, Esq. VSB 37402
Title Insurer: Stewart Title Guaranty Company

\

This Deed is effective the date first above written.   WITNESS the following signatures and seals.

**NVR, INC.**, a Virginia corporation

By: _____
Name: Carla Pezzullo
Title: Division Manager

State of Virginia
County of <u>Fairfax</u>, to wit;

I, the undersigned, a Notary Public in and for the jurisdiction aforesaid, do hereby certify that <u>Carla Pezzullo, a Division Manager</u> of NVR, INC., a Virginia corporation, whose name is signed to the foregoing Deed, personally appeared and acknowledged the same before me in my jurisdiction aforesaid.

Given under my hand this __2__ day of __November__, 2015.



_____
NOTARY PUBLIC
Name:     Cindy M Rivera-Galvez
ID No:    7648652
Commission expiration: June 30, 2019

2

201609230077473
9/23/2016          9:51 AM
Michèle B. McQuigg, Clerk
Prince William County, VA
Pages: 3     DEED COR

## CORRECTION DEED

**THIS CORRECTION DEED** is made effective **November 2, 2015,** by and between **NVR, Inc., a Virginia Corporation,** Grantor, and **Frederick CHEEKS,** Grantee(s);

## WITNESSETH:

That for and in consideration of the sum of Zero and No/100 Dollars ($0.00), this being a correction of a deed filed in Instrument No. **201512020099137,** the Grantor does hereby confirm, grant, and convey in fee simple with Special Warranty, unto the Grantee(s):

All that certain lot, piece or parcel of land, with all improvements thereon and all appurtenances thereto belonging, located and being in the County of Prince William, Commonwealth of Virginia, and being designated as follows:

**Lot 59, Phase 2B, Section 2, HARBOR STATION,** as the same is duly dedicated in Instrument Number 201211160110982, and as shown on plat at Instrument Number 201211160110983, recorded among the land records of Prince William County, Virginia.

**This Property Is Conveyed Subject To The Attached NOTICE.**

AND BEING the same property conveyed to grantee(s) by deed referenced above among the aforesaid land records.

This conveyance is also made expressly subject to the conditions, restrictions, reservations and easements of record, if any, affecting the aforesaid land records and constituting constructive notice.

| | |
|---|---|
| **Consideration:** | $0.00 Tax-exempt Va. Code 58.1-810(2) |
| | This deed adds a missing notice. |
| **Assessed Value:** | Not applicable |
| **Grantee's Address:** | **17160 Belle Isle Drive** |
| | Dumfries, VA |
| | 22026 |
| **Please Return to:** | NVR Settlement Services, Inc. |
| | 3701 Pender Drive, Suite 300 |
| | Fairfax, VA 22030 |
| **Tax Map Number:** | 8389-26-3514 |
| **File Number:** | 069-68242-15 |

This Deed prepared by Benjamin C. Winn, Jr. Esq. VSB 21940
Title Insurer: Stewart Title Guaranty Company

## NOTICE

Notice is hereby given that the Property is located within the boundaries of the Cherry Hill Community Development Authority District (the "*CDA District*") as created by the Board of Supervisors of Prince William County, as described in that certain Declaration of Notice of Special Assessment recorded among the land records of Prince William County, Virginia as Instrument No. 201308280087535 (the "*CDA Notice*").

As more fully described in the CDA Notice, the Property and all other lots, including residential, commercial and mixed use lots, within the CDA District is or will be subject to a special assessment to pay for public improvements which serve the CDA District. These assessments are in addition to any other taxes and assessments that may be imposed by Prince William County (the "*County*"). Special assessments will be collected at the same time and in the same manner as regular real estate taxes collected by the County. The Property, and each other home within the CDA District, has the option to pre-pay the special assessments up-front or to pay the special assessments over time. If the owner of the Property elects to pay the special assessments over time, the special assessments are to be collected annually for 30 years after the parcel is classified as developed property. The annual special assessment for the first assessment year for each type of home within the CDA District will be as follows:

| | |
|---|---|
| Single-family Detached | $1,320.00 |
| Single-family Attached | $1,069.00 |
| Multi-Family | $  871.00 |

The special assessment will increase each year after the first assessment year at the rate of 2% per year. The special assessment may be prepaid at any time.

The CDA District is overseen by an administrator. Further information pertaining to the CDA District and the assessments applicable to the Property or the other property within the CDA District can be found in the County land records or obtained from the administrator, whose contact information is as follows:

Municap, Inc.
8965 Guilford Road, Suite 210
Columbia, Maryland 21046
Attn: Keenan S. Rice
Phone: (443) 539-4101
Toll free: (888) 317-9970

**THE FOREGOING COVENANTS REGARDING THE CDA DISTRICT SHALL BE BINDING ON THE GRANTEE AND ITS SUCCESSORS AND ASSIGNS, SHALL CONSTITUTE A COVENANT RUNNING WITH THE LAND, AND SHALL BE INCLUDED IN EACH DEED FOR THE CONVEYANCE OF A FEE SIMPLE INTEREST IN THE PROPERTY FOR SO LONG AS THE SPECIAL ASSESSMENT REMAINS OUTSTANDING. AT SUCH TIME AS THE SPECIAL ASSESSMENT IS FULLY EXTINGUISHED, THESE COVENANTS REGARDING THE CDA SHALL AUTOMATICALLY TERMINATE AND EXPIRE. BY ITS ACCEPTANCE OF THIS DEED, GRANTEE COVENANTS TO INCORPORATE THE FOREGOING DISCLOSURES INTO ALL SUBSEQUENT DEED(S) BY WHICH GRANTEE CONVEYS THE FEE SIMPLE INTEREST IN THE PROPERTY OR ANY PART THEREOF.**

WITNESS the following signature(s) and seal(s):

**NVR, INC.,** a Virginia corporation

By: _____

Carla Pezzullo, Vice-President

State of Virginia,
County of Fairfax, to-wit:

I, the undersigned Notary Public, in and for the City/County aforesaid and the Commonwealth of Virginia, do hereby certify that Carla Pezzullo, a Vice-President of **NVR, INC.,** whose name is signed to the foregoing Deed, acknowledged the same before me in the jurisdiction aforesaid, on behalf of and as the act of the said company, duly authorized by and acting for **NVR, INC,** this 19 day of September, 2016.

_____
NOTARY PUBLIC

Commission expiration: 6/30/2019

**EXHIBIT D**

**TRUSTEE'S SALE**
**17160 Belle Isle Drive**
**Dumfries, VA 22026**

In execution of the Deed of Trust dated November 30, 2015 and recorded on December

2, 2015 in Instrument # 201512020099138 of Prince William County land records, Trustee

Services of Virginia, LLC, the appointed Substitute Trustee, will offer for sale at public auction

**at the front of the Prince William County Circuit Court (9311 Lee Avenue) at Manassas,**

**Virginia on February 19, 2019 at 2:00 PM** the property more particularly described in the

aforementioned Deed of Trust, located at the property address listed below and briefly identified

as follows:

> All that certain lot, piece or parcel of land, with all improvements thereon and all
> appurtenances thereto belonging, located and being in the County of Prince William,
> Commonwealth of Virginia, and being designated as follows:

> Lot 59, Phase 2B, Section 2, Harbor Station, as the same is duly dedicated in Instrument
> Number 201211160110982, and as shown on plat at Instrument Number
> 201211160110983, recorded among the land records of Prince William County, Virginia.

> Tax No.: 8389-26-3514

> Property address: 17160 Belle Isle Drive, Dumfries, VA 22026

The property will be sold "AS IS," WITHOUT REPRESENTATION OR WARRANTY

OF ANY KIND AND SUBJECT TO conditions, covenants, restrictions, reservations, easements,

rights of way, and all other matters of record taking priority over the Deed of Trust, if any, as

might be listed in this notice or may be announced at the sale.


TERMS OF SALE: A non-refundable bidder's deposit of $42,000.00 or 10% of the sale

price, whichever is less, by cashier's or certified check required at time of sale, except for the

party secured by the Deed of Trust. Risk of loss is on the purchaser from date and time of

auction. Balance of the purchase price must be paid by cashier's check within 14 days from sale date. Except for Virginia Grantor tax, all settlement costs and expenses are purchaser's responsibility. Taxes are pro-rated to the date of sale. Purchaser is responsible for obtaining possession of the property. If purchaser defaults, deposit may be forfeited and property resold at the risk and cost of the defaulting purchaser who shall be liable for any deficiency in the purchase price and all costs, expenses, and attorney's fees of both sales. If Trustee does not convey title for any reason, purchaser's sole remedy is return of deposit without interest. This sale is subject to post-sale audit of the status of the loan secured by the Deed of Trust including but not limited to determining whether prior to sale a forbearance, repayment, or other agreement was entered into, the loan was reinstated or paid off, or whether the property became subject to an automatic stay under the U.S. Bankruptcy Code prior to the sale; in any such event this sale shall be null and void and purchaser's sole remedy shall be return of deposit without interest. Pursuant to the Federal Fair Debt Collections Practices Act, this law firm is a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

**FOR INFORMATION CONTACT:**
**BROCK & SCOTT, PLLC**
(Attorney for TRUSTEE SERVICES OF VIRGINIA, LLC)
484 Viking Drive, Suite 203
Virginia Beach, VA 23452
(757)213-2959

## MEMORANDUM OF TRUSTEE'S FORECLOSURE SALE

The undersigned Substitute Trustee hereby certifies that the property described in the attached notice of Trustee's Sale and commonly known as **17160 Belle Isle Drive, Dumfries, Virginia 22026** was offered for sale on **February 19, 2019** at 2:00PM and in accordance with the terms of said notice.

At the time of sale, the following additional announcements were made:

The Substitute Trustee has received from the beneficiary under the deed of trust, a written one-price bid of $493,624.00 for the subject property. This one-price bid was entered by announcement pursuant to Section 55-59.4(A)(1) of the 1950 Code of Virginia, as amended.

The successful bidder was:

____ Third party: _Clear Sky Properties, LLC_ and the successful bid was $_493,625.00_.

TRUSTEE SERVICES OF VIRGINIA, LLC

By: _____

_February 19, 2019_ Vice President

_____
Bidder

_____
Bidder

--------------------------------------------------------------------------------

The undersigned Substitute Trustee hereby acknowledges receipt of $_45,000.00_, in cash or certified check, from the bidder on _2/19/19_.

TRUSTEE SERVICES OF VIRGINIA, LLC

By: _____

_2/19, 2019_ President

****FOR CLOSING INSTRUCTIONS PLEASE CONTACT:
VA3RDPARTYSALES@BROCKANDSCOTT.COM